United States Courts
Southern District of Texas
F I L E D

APR 3 0 2026

Nathan Ochsner, Clerk of Court

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF TEXAS**          **HOUSTON DIVISION**

In re:                                                    )
                                                          )          Chapter 11
NINE ENERGY SERVICE,                                      )
INC., et al.,                                             )
                                                          )          Case No. 26-90295 (CML)
          Reorganized Debtors.                            )          (Jointly Administered)
                                                          )

---

## OBJECTION OF JEFFREY D. CHAU TO FIRST AND FINAL FEE APPLICATION OF KIRKLAND & ELLIS LLP [DOCKET NO. 274]

---

Jeffrey D. Chau, a pro se party in interest holding 55,265 shares of Class 8 Common Stock and $2,000 face value of Class 4 Senior Secured Notes, and appellant in the pending appeal of the Confirmation Order [Docket No. 189] to the United States District Court [Docket Nos. 224, 225], hereby objects to the First and Final Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "K&E") [Docket No. 274] and respectfully states as follows:

### I. STANDING

1. The undersigned is a party in interest under 11 U.S.C. § 1109(b). K&E's Fee Application invokes the § 330 standard. Docket No. 274, ¶ 3. The undersigned has previously filed objections to the fee applications of FTI Consulting, Inc. [Docket No. 261], Moelis & Company LLC [Docket No. 262], and KPMG LLP [Docket No. 267], all of which were accepted by the Court.

1

2. To the extent K&E argues the undersigned lacks standing under *In re Roman Catholic Church of the Archdiocese of New Orleans*, No. 20-10846, ECF Doc. 4930 (Bankr. E.D. La. Mar. 10, 2026) (Grabill, J.) (the "*Archdiocese Opinion*"), attached to Docket No. 305 in this case as Exhibit A, that case is materially distinguishable. The *Archdiocese Opinion* held that abuse claimants lacked pecuniary interest in fee disgorgement because their recovery was "absolutely limited to the Settlement Trust" — a fixed $230 million pot — such that fee reductions could "never inure to the benefit of abuse claimants." *Id.* at 23. The court emphasized that "no 'waterfall' provision appears in any version of the proposed plan or the Confirmed Joint Plan that would shift any reduction in administrative fees to unsecured creditor classes." *Id.* at 23 n.25. The undersigned's situation is the opposite. The confirmed Plan in this case establishes a Professional Fee Escrow Account funded on the Effective Date and provides that "[w]hen all such Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court." Plan, Art. II.D.2 [Docket No. 173-1, at 15]. This is the waterfall mechanism the *Archdiocese Opinion* identified as missing. Reductions in K&E's fees flow through the Professional Fee Escrow Account to the Reorganized Debtors, in which the undersigned is entitled under Plan Article III.B.4(b) to receive a pro rata share of the New Equity Interests as a Holder of an Allowed Senior Secured Notes Claim.

3. The structural pecuniary interest is reinforced by the substance of this Objection. Section IV.A challenges $614,206 in Matter 24 fees as benefiting New Equity holders rather than the bankruptcy estate. The undersigned is a New Equity holder. If those fees benefited the class to which the undersigned belongs, then disallowance of those fees benefits that same class. The

*Archdiocese Opinion* itself adopts the § 1109(b)-only framework of *In re AIO US, Inc.*, 672 B.R. 261, 273 (Bankr. D. Del. 2025), under which Article III standing is required only of the party invoking the court's jurisdiction (here, K&E), not of the objector. *Archdiocese Op.* at 19–20. The Court also has independent authority and obligation to review fee applications regardless of any standing question. *In re 1002 Gemini Interests LLC*, No. 11-38815, 2015 WL 913542, at *3 (Bankr. S.D. Tex. Feb. 27, 2015); *In re Delgado*, No. 06-0439, 2006 WL 3227331, at *3 (Bankr. S.D. Tex. Nov. 2, 2006).

## II. THE FEE APPLICATION

4. K&E seeks final allowance of $2,749,607.00 in fees and $49,538.99 in expenses ($2,799,145.99 total) for services rendered during the period from February 1, 2026 through March 4, 2026 — a period of 32 days. Docket No. 274, at 1.

5. Key metrics:

| Metric | Value |
|---|---|
| Total professional hours | 1,881.00 |
| Average hourly rate (blended) | $1,461.78 |
| Hourly rate range | $435.00 – $2,975.00 |
| Number of timekeepers | 58 (24 partners, 25 associates, 9 paraprofessionals) |
| Matter categories | 16 |
| Voluntary reductions | $93,514.38 ($93,189.50 fees, $324.88 expenses) |
| Pre-petition retainer (earned upon receipt) | $4,392,684.62 |
| Retention basis | Hourly rates, subject to § 330 review |

6. K&E was retained under the Order Authorizing Retention [Docket No. 208] pursuant to sections 327(a) and 330 of the Bankruptcy Code. The Order requires K&E to apply for compensation "in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any other applicable

3

procedures and orders of the Court." Docket No. 208, ¶ 4. K&E's compensation is therefore subject to the full reasonableness review prescribed by 11 U.S.C. § 330(a)(3).

7. Including the pre-petition retainer, K&E's total compensation for the Nine Energy engagement is $7,191,830.61 ($4,392,684.62 retainer + $2,799,145.99 post-petition). The retainer was "earned upon receipt" and will not be applied to post-petition fees. Docket No. 138, ¶ 20.

## III. APPLICABLE LEGAL STANDARD

8. The Fifth Circuit applies the lodestar method to fee applications under § 330: reasonable hours multiplied by a reasonable hourly rate, adjusted by the factors enumerated in § 330(a)(3) and the twelve *Johnson* factors. *CRG Partners Group, LLC v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 655–56 (5th Cir. 2012). The fee applicant bears the burden of establishing that each service was "reasonably likely to benefit the estate at the time the services were rendered." *Barron & Newburger, P.C. v. Texas Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 276 (5th Cir. 2015) (en banc).

9. The adequacy of time records is subject to scrutiny. Reconstructed or insufficiently detailed records warrant heightened examination. *In re Evangeline Refining Co.*, 890 F.2d 1312, 1325–26 (5th Cir. 1989). The Court "shall not allow compensation for … unnecessary duplication of services" or services "not reasonably likely to benefit the debtor's estate." 11 U.S.C. § 330(a)(4)(A). This is a mandatory disallowance — "shall not" leaves no judicial discretion where duplication or lack of estate benefit is established, regardless of whether the lodestar amount is otherwise presumptively reasonable.

4

10. The specific objections raised below are based entirely on K&E's own exhibits and disclosures filed in support of the Fee Application.

## IV. SPECIFIC OBJECTIONS

**A. Post-Emergence Corporate Work Benefits New Equity Holders, Not the Estate**

11. Section 330(a)(4)(A)(ii) provides that the court "shall not allow compensation for … services that were not – (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A)(ii). Section 330(a)(3)(C) further requires the court to consider "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title." The fee applicant bears the burden of demonstrating that the services rendered were "reasonably likely to benefit the debtor's estate at the time rendered." *Woerner*, 783 F.3d at 276.

12. K&E's Exhibit G to the Fee Application identifies Matter 24 (Corporate, Securities, and Governance Matters) as the second-largest fee category: $614,206.00 in fees and 370.80 hours — representing 22.3% of all fees requested. Docket No. 274, Exhibit G. The time entries in Exhibit H for Matter 24 describe work including SEC filings (Forms 8-K, 10-K, and S-1 registration statements), NYSE and Nasdaq stock listing applications, CUSIP applications and stock certificate preparation, registration rights agreements, Depository Trust Company (DTC) matters, charter and bylaws drafting for the reorganized company, board governance documentation, and entity conversion analysis. Docket No. 274, Exhibit H.

13. K&E's own Exhibit E identifies the lead timekeeper on this work as Lanchi Huynh, classified as a Partner in the Corporate - Capital Markets department — not a restructuring or

bankruptcy practitioner. Docket No. 274, Exhibit E, at 2. Huynh billed 117.60 hours at $2,395 per hour, totaling $281,652.00 — 10.2% of all fees in the Fee Application and 45.9% of all Matter 24 fees. *Id.*

14. These services did not administer the bankruptcy estate. They prepared the reorganized company to operate as a publicly traded entity after emergence. The beneficiaries of SEC registration statements, stock exchange listings, CUSIP numbers, registration rights agreements, and post-emergence governance structures are the new equity holders of Reorganized Nine Energy — not the bankruptcy estate and not its pre-petition creditors. Under the confirmed Plan, Holders of Allowed Senior Secured Notes Claims received "100% of the New Equity Interests." Plan, Art. III.B.4(b) [Docket No. 173-1]; Confirmation Order, Docket No. 189.

15. The distinction matters because the estate's creditors derive no benefit from the reorganized company's ability to list on a stock exchange or register securities with the SEC. Those are corporate formation services for the successor entity and its owners. K&E has not demonstrated — and the Fee Application does not explain — how SEC filings, CUSIP applications, or stock listing work was "necessary to the administration of" the bankruptcy case or "reasonably likely to benefit the debtor's estate" as required by Section 330(a)(4)(A)(ii) and *Woerner.* The undersigned respectfully submits that the Court should disallow or substantially reduce the $614,206.00 in Matter 24 fees.

## B. Excessive Retention Paperwork

16. K&E billed the estate $231,299.50 across 180.90 hours for preparing retention applications — $93,612.50 (81.10 hours) to prepare its own retention application (Matter 34),

and $137,687.00 (99.80 hours) to prepare retention applications for FTI Consulting, Moelis & Company, KPMG, PwC, and Kane Russell Coleman Logan (Matter 35). Docket No. 274, Exhibit G. Combined, retention paperwork accounts for 8.4% of all fees requested in this application.

17. Retention applications follow a template structure prescribed by the Bankruptcy Local Rules and the United States Trustee's guidelines. While they include substantive components — most notably conflicts analysis and disinterestedness determinations — the document format and many of its constituent parts are standardized across cases. K&E files retention applications in every bankruptcy case in which it serves as debtor's counsel and has developed institutional processes for their preparation.

18. The lead drafter of K&E's own retention application was Carter Wietecha, an associate billing at $1,315 per hour, who billed 30.70 hours ($40,370.50) for this task. Trevor Eck, an associate billing at $1,515 per hour, billed an additional 12.70 hours ($19,240.50) reviewing the same application. Docket No. 274, Exhibit H. The undersigned respectfully submits that $59,611.00 in associate time for a single retention application — a document K&E produces as a matter of course — warrants the Court's scrutiny under 11 U.S.C. § 330(a)(3)(D), which requires the Court to consider "whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed."

19. Retention applications and fee applications serve different functions — retention applications require conflicts analysis and disinterestedness determinations that fee applications do not. But the cost disparity is nevertheless probative. KPMG compiled and presented 263 hours of time records across 25 professionals for its fee application in 11.6 hours and $3,436.10.

7

Docket No. 258, Exhibit B. K&E billed twenty-seven times that amount in fees — $93,612.50 — to prepare a single retention application for itself. Whatever additional complexity attends a retention application, a twenty-seven-fold cost differential for an administrative filing that K&E produces in every bankruptcy case warrants the Court's scrutiny.

20. Section 330(a)(6) provides that "[a]ny compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application." While this provision addresses fee applications specifically, the principle it embodies — that compensation for administrative paperwork must be proportionate to the skill actually required — applies with equal force to retention applications. The undersigned respectfully requests that the Court evaluate whether $231,299.50 for retention paperwork in a 32-day prepackaged case is commensurate with the complexity of that task.

## C. Hearing Overstaffing and Duplicative Services

21. Section 330(a)(4)(A)(i) provides that "the court shall not allow compensation for … unnecessary duplication of services." This is a mandatory disallowance — the statute uses "shall not," leaving no judicial discretion where duplication is established. K&E billed $130,137.00 across 93.20 hours for hearing-related work (Matter 30), deploying 19 timekeepers across two hearings in a 32-day prepackaged case. Docket No. 274, Exhibit G.

22. Two hearings occurred during the fee period: the First Day Hearing on February 3, 2026, and the Confirmation Hearing on March 4, 2026.

23. For the First Day Hearing, at least seven K&E attorneys billed for attending or presenting at the same proceeding:

8

| | Timekeeper | Role | Hours | Description (from Exhibit H) |
|---|---|---|---|---|
| (a) | Ross Fiedler | Partner | 5.00 | "Attend first day hearing" (1.00) + review and preparation (4.00) |
| (b) | Chad Husnick | Partner | 3.60 | "Present at first day hearing" (0.90) + preparation (2.70) |
| (c) | Seth Sanders | Associate | 6.70 | Including attending first day hearing |
| (d) | Trevor Eck | Associate | 3.10 | Including participating in first day hearing |
| (e) | Mary Catherine Young | Associate | 1.00 | "Participate in first day hearing" |
| (f) | Orla O'Callaghan | Associate | 2.20 | Including attending first day hearing |
| (g) | Dominick Vito Manetta | Associate | 6.20 | Including drafting and revising first day hearing presentation |

Docket No. 274-8, Exhibit H. Additional timekeepers — including Naim Mashni (5.20 hours), Christian Mancino (7.20 hours), and Robert Orren (3.70 hours) — billed for preparation and logistics related to the same hearing. *Id.*

24. The Fee Application does not explain why seven attorneys were required to attend the same First Day Hearing, or what differentiated role each attorney performed that could not have been performed by the one or two attorneys who actually presented to the Court. A First Day Hearing in a prepackaged case is a procedural milestone, not a contested evidentiary proceeding. Fee applicants must exercise "billing judgment" by writing off "duplicative services, redundant costs precipitated by overstaffing." *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 856 (3d Cir. 1994).

25. For the Confirmation Hearing on March 4, 2026, at least five K&E attorneys billed for attending:

| | Timekeeper | Rate | Hours | Description (from Exhibit H) |
|---|---|---|---|---|
| (a) | Ross Fiedler | $1,895 | 1.00 | "Attend telephonic confirmation hearing" |
| (b) | Chad Husnick | $2,975 | 1.40 | "Attend confirmation hearing (.7)" + preparation |
| (c) | Seth Sanders | $1,595 | 0.70 | "Telephonically attend confirmation hearing" |
| (d) | Christian Mancino | $435 | 0.70 | "Attend and monitor listen only line re confirmation hearing" |
| (e) | Amy Donahue | $435 | 1.20 | "Assist attorneys at confirmation hearing" (0.70) + logistics (0.50) |

Docket No. 274-8, Exhibit H.

9

26. The entry for Christian Mancino illustrates the pattern. Mancino billed 0.70 hours ($304.50) to "attend and monitor listen only line re confirmation hearing." Docket No. 274-8, Exhibit H. A listen-only line, by definition, involves no speaking role, no active participation, and no contribution to the proceeding. This is observation billed to the estate at $435 per hour. The dollar amount is small, but the entry is symptomatic of the staffing approach reflected throughout the Fee Application: billing the estate for passive attendance by timekeepers with no differentiated role. Section 330(a)(4)(A)(ii) provides that the Court "shall not allow compensation" for services that were not "reasonably likely to benefit the debtor's estate."

27. Three attorneys — Fiedler, Husnick, and Sanders — billed for attending both hearings. For a telephonic confirmation hearing in a prepackaged case where no party objected to confirmation, the undersigned respectfully requests that the Court evaluate whether attendance by three partners and associates, plus a paraprofessional on a listen-only line, constituted "unnecessary duplication of services" under Section 330(a)(4)(A)(i).

## D. Internal Status Meetings Billed to the Estate

28. K&E billed $53,354.00 across 40.60 hours for "Case Administration" (Matter 33), involving 26 of the 58 timekeepers who billed on this engagement. Docket No. 274, Exhibit G. The time entries in this matter are dominated by internal K&E status conferences and intra-firm correspondence. Docket No. 274-8, Exhibit H.

29. On February 4, 2026, at least 14 K&E timekeepers billed for internal status conferences with descriptions such as "Conference with R. Fiedler, K&E team re case status, work in process." On February 18, 2026, 15 or more timekeepers billed for entries described as

"Conference with S. Sanders, K&E team re work in process," at increments of 0.10 to 0.60 hours each. Docket No. 274-8, Exhibit H. These are internal firm coordination meetings — K&E attorneys updating each other on the status of their own work.

30. Section 330(a)(3)(C) requires the Court to consider "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title." Internal status meetings are part of a law firm's ordinary cost of doing business. These meetings benefit K&E's internal organization, not the bankruptcy estate.

31. The Case Administration entries also include work that is squarely internal firm overhead, of which the following entry is illustrative. On February 27, 2026, Janet Y. Walker billed 2.00 hours ($910.00) at $455 per hour for the following: "Review audit inquiry letter Nine Energy Service, Inc.; review file and previous letter; create client record; KENI client/matter search; Prepare and send out audit inquiry memo; Review responses to internal survey memo; Prepare audit letter; prepare cover memo to billing attorney; obtain approval from Risk Management Compliance Department; send to attorney for signature." Docket No. 274-8, Exhibit H. This is K&E's internal audit response and risk management compliance process — creating client records, searching K&E's own internal systems, preparing internal memos, and obtaining approval from K&E's own Risk Management Compliance Department. These are not services to the bankruptcy estate. They are the administrative cost of operating a law firm, billed to the estate at professional rates.

32. K&E deployed 58 timekeepers across 32 billing days in a prepackaged case with a pre-negotiated restructuring support agreement. The firm deployed more timekeepers than there

11

were days in the case. The undersigned respectfully submits that the volume of internal coordination required to manage a team of this size — as reflected in the Case Administration entries — is a direct consequence of K&E's own staffing decisions, and that the estate should not bear the cost of coordinating an unnecessarily large team. *See Busy Beaver*, 19 F.3d at 856 (fee applicants must exercise "billing judgment" by writing off "redundant costs precipitated by overstaffing").

**E. Fee-Defense Costs Are Not Compensable**

33. The Retention Order in this case directly forecloses any attempt by K&E to charge fee-defense costs to the estate. Docket No. 208, ¶ 6, provides that the fee-defense reimbursement provisions in K&E's Engagement Letter "are not approved pending further order of the Court." No such further order has been sought or obtained. This Court's order — entered on K&E's own retention application — is independently dispositive of the fee-defense question. To the extent further authority is needed, the Supreme Court in *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015), held that 11 U.S.C. § 330(a)(1) does not permit bankruptcy professionals to recover fees incurred in defending their own fee applications, applying the American Rule that "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Id.* The contractual fee-defense provision in K&E's Engagement Letter (Exhibit C to Docket No. 274, at 8) is unenforceable because Section 328(a) does not provide the "specific and explicit" statutory authorization needed to override the American Rule. *See In re Boomerang Tube, Inc.*, 548 B.R. 69, 72–73 (Bankr. D. Del. 2016) (Walrath, J.).

34. Although no discrete fee-defense matter category appears in the Fee Application, any time K&E expends responding to this Objection — whether embedded in Case Administration

12

(Matter 33), Retention (Matter 34), or otherwise — cannot be charged to the estate. This paragraph serves as formal notice of that limitation.

## V. NO INDEPENDENT OVERSIGHT

35. No committee of unsecured creditors or equity holders was appointed in these cases. No independent fiduciary reviewed K&E's fee structure, staffing decisions, or billing practices. The Reorganized Debtors who would ordinarily negotiate fee reductions are controlled by the former Senior Secured Noteholders, who received 100% of New Equity Interests under the Plan. These new equity holders are not neutral evaluators of K&E's fees — they are the direct beneficiaries of the post-emergence corporate and securities work (Matter 24, $614,206.00) whose cost is challenged in this Objection. Their silence reflects a shared interest in preserving K&E's fee structure, not independent approval of its reasonableness. This structural absence of any adversarial check on professional compensation warrants heightened judicial scrutiny of the Fee Application. *See Busy Beaver*, 19 F.3d at 841 (holding that the bankruptcy court has a duty to review fee applications deriving from "the court's inherent obligation to monitor the debtor's estate and to serve the public interest").

## VI. VOLUNTARY REDUCTIONS

36. K&E voluntarily reduced its fees by $93,189.50 and its expenses by $324.88 — a combined reduction of $93,514.38, or approximately 3.3% of gross fees. Docket No. 274, ¶ 51. In comparable recent matters, K&E has applied substantially larger voluntary reductions: in *In re Northvolt AB*, No. 24-90577, Dkt. 600, ¶ 68 (Bankr. S.D. Tex. May 1, 2025), K&E applied over $527,000 in voluntary reductions. The modesty of K&E's voluntary reductions in this case, when

13

considered alongside the specific objections raised above — post-emergence corporate work, excessive retention paperwork, hearing overstaffing, and internal meeting costs — suggests that K&E has not fully exercised the "billing judgment" that a non-bankruptcy client would demand. *See Busy Beaver*, 19 F.3d at 856 (fee applicants must exercise the same "billing judgment" as non-bankruptcy attorneys by "writing off unproductive research time, duplicative services, redundant costs precipitated by overstaffing").

## VII. RELIEF REQUESTED

37. WHEREFORE, the undersigned respectfully requests that this Court:

(a) schedule a hearing on the Fee Application;

(b) require K&E to demonstrate the necessity and non-duplicative nature of each timekeeper's contribution, particularly for the 58 timekeepers deployed over a 32-day prepackaged case;

(c) disallow or reduce fees for post-emergence corporate and securities work (Matter 24, $614,206.00) that benefited the Reorganized Debtors' equity holders rather than the estate;

(d) reduce fees for excessive retention application preparation (Matters 34 and 35, $231,299.50);

(e) disallow fees attributable to unnecessary duplication of services at hearings and internal status meetings under 11 U.S.C. § 330(a)(4)(A)(i);

(f) order that any fee-defense costs be borne by K&E, consistent with *Baker Botts*, 576 U.S. 121 (2015), and Docket No. 208, ¶ 6; and

(g) grant such other and further relief as the Court deems just and proper.

14

Respectfully submitted on this 30th day of April, 2026,

Jeffrey D. Chau, pro se
#1169
1715 Lundy Ave Ste 192
San Jose, CA 95131
669-200-9986
chaujeffrey@protonmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2026, a true and correct copy of the foregoing Objection was delivered to the Clerk of Court at the following address:

United States Bankruptcy Court
Southern District of Texas
515 Rusk Street, Room 1217
Houston, TX 77002

The undersigned respectfully represents that service upon all parties on the master service list will be accomplished through the CM/ECF notification system upon docketing of this Objection by the Clerk, consistent with Section E, Paragraph 11(a) of the Complex Case Procedures for the Southern District of Texas.

Jeffrey D. Chau

15